*J. L. A. King, for appellant.    P. D. Yeiser, for appellee.*

---

P. P. and J. O. Martin *v.* Commonwealth.

**Criminal Law—Horse Stealing.**

> A defendant cannot be guilty of horse stealing if in fact the horse was owned by him.

APPEAL FROM BALLARD CIRCUIT COURT.

October 27, 1875.

Opinion by Judge Lindsay:

P. P. Martin and John O. Martin were indicted by the grand jury of Ballard county for stealing a horse, the property of William H. Davis.

The proof shows that the only interest Davis ever owned in the

horse was a special property, growing out of the fact that as sheriff of the county he had, by virtue of an execution in his hands in favor of Northington and against P. P. Martin, levied upon it. He delivered the horse to Northington as his bailee, and authorized the creditor and debtor to arrange the debt evidenced by the execution; and upon its being arranged, Northington was authorized to restore the horse to Martin. Martin made payments on the debt to Northington, and sent him work that the value of certain pork he proposed to deliver upon his order, would, in his opinion, about satisfy it. A subsequent conversation between the parties tended to show that in this he was mistaken, but he declined to pay the balance claimed, and thereby obtain possession of his property, saying, in effect, that he had not taken the horse to Northington, and would not take him away.

On the night succeeding this interview it is alleged that the horse was stolen from Northington's possession. There is testimony conducing to prove that the horse escaped and returned to the home of Martin. He sent the horse to Marshall county, by his son, the appellant, John O. Martin, as they claim, to prevent its being subjected to the payment of certain debts for which P. P. Martin was bound as surety for the late sheriff of Ballard county. We see no objection to the action of the circuit judge in admitting and excluding testimony.

The first instruction given for the commonwealth is substantially correct, as is also instruction No. 2. Instruction marked No. 3 is objectionable. It assumes that Davis, at the time of the alleged larceny, had an interest in and claim to the property, resulting from the levy of the execution, and the possession thereby acquired. This is one of the most material questions of fact in controversy, and it ought not to be determined by the court. If Martin had paid off the debt after the levy, then the sheriff had no interest in or claim to the horse. The title to the property remained in P. P. Martin, notwithstanding the levy, and he was entitled, upon payment of the debt, to have it returned to him. After such payment, he might commit a trespass, but could not commit a larceny, by unlawfully regaining the possession to which he was entitled, unless he intended by so doing to attempt fraudulently to charge Davis with the value of the horse. The instruction does not make the guilt of the accused depend upon the latter proposition, and erroneously admit, as proved, a question which as we have already said the jury should have been allowed to determine.

By instruction No. 4, the jury were, in effect, told that because Martin had no right to the possession of the horse until the whole amount of the execution was paid, therefore the taking and carrying away, if any part thereof remained unpaid, was in law felonious. It is true that the instruction does not set out this proposition in terms; but it is purely abstract in its nature, and when considered in connection with the questions of fact involved in this prosecution, it naturally, if not necessarily, leads to the conclusion stated.

Instruction No. 5, like instruction No. 3, erroneously assumes it to be a fact that at the time of the alleged taking and carrying away of the horse, Davis, the sheriff, had a claim to him. It also determines the law to be that the taking under the circumstances therein recited was felonious, unless the jury should believe from the evidence that the defendants, in good faith, believed that Northington had turned the horse out, to return home, or consented to his being turned out. Now although they may not have believed either of these things, yet if they believed that the debt had been paid in full, the taking possession and carrying away of the horse was not felonious. This instruction is objectionable in another respect. It is dangerous for the court to select out and group together certain of the prominent circumstances in a case, and make the guilt or innocence of the accused turn upon the sufficiency or insufficiency of the evidence touching these supposed facts. The better mode would have been to state to the jury what constitutes in law a felonious taking and carrying away in cases of larceny, then permitted the jury to apply the law to the particular facts of the case under consideration.

Instruction No. 7 also erroneously assumes that Davis owned an interest in the property, when it is alleged to have been taken. The instructions given for the accused were sufficiently favorable to their defense; but the instructions given for the commonwealth are, in the main, inconsistent with them. As the jury could not be expected to reconcile these inconsistencies, it is evident that the accused must have been prejudiced by the erroneous exposition of the law given by the court at the instance of the commonwealth.

A new trial should have been granted, and for the error of the circuit court in overruling appellants' motion therefor, the judgment is *reversed* and the cause remanded for further proceeding, not inconsistent with this opinion.

*J. M. Bigger, J. & J. W. Rodman, for appellants.*
*T. E. Moss, for appellee.*